Good morning. May it please the Court, my name is David Schlesinger. I represent Appellants Edith Menbreno and Luis Soriano. They're also the Cross Appellees. For ease of simplicity, I will refer to them collectively as Ms. Menbreno. I'm joined at Council's table by my co-Counsel Cameron Seahott, who is Ms. Menbreno's trial counsel. With the Court's indulgence, I would like to reserve three minutes of rebuttal. I would like to initially address the issues that we've raised in our appeal. If the Court wishes for me to defer arguing on the Cross Appeal, I would be pleased to do so. Otherwise, I'll answer any questions the Court has at any time. So, on January 24, 2018, following more than two days of trial, at 9 a.m. approximately, a video link that would have connected Ms. Menbreno from an attorney's office in San Miguel, El Salvador, to the District Court in Los Angeles failed, for reasons that are not apparent to anyone. It certainly wasn't Ms. Menbreno's fault that the link failed. Nevertheless... Do we know that, that it wasn't her fault? I mean, do we know she was there, she was ready to go? We do know that she was there and ready to go, Your Honor. It's apparent on the record that there was an audio link, an audio Skype link, that existed between the District Court and the attorney's office in San Miguel, El Salvador. Later, during that hearing, during that trial day, Your Honor, Mr. Seahat's assistant in the courtroom was able to establish a telephonic link between herself and Ms. Menbreno and the attorney in San Miguel, El Salvador. So, it is... Let me ask you about this. I'm a district judge, so I can certainly envision having a jury in the box and waiting for this video connection, and that can be very annoying to the judge and the jury. And this being a foreign thing made it even harder. How long do you think the magistrate judge was supposed to wait for this to be all sorted out? Was he supposed to suspend the trial to the following day or wait an hour or, you know? Yeah, certainly, Your Honor, he did not need to even suspend the trial. He had postponed the continued direct examination of Officer Stringer, which Mr. Seahat was in the process of conducting, so that Ms. Menbreno could testify via video link at an appointed time, at an earlier scheduled time. So, what the district court easily could have done was simply allowed Mr. Seahat to continue examining Officer Stringer while the IT professional in the district court attempted to reestablish the link. Alternatively, as Mr. Seahat proposed during argument about this issue, the district court could have simply precluded Ms. Menbreno from having any opportunity to present a damages case, either economic or non-economic damages. He was prepared to solely proceed on nominal damages and punitive damages. So, there were several reasonable alternative measures that the district court, the magistrate judge, could have undertaken, but he declined to do so. So, I suppose that is in the Rule 41B and inherent of the law. In the authority realm, regarding the standing issue, I think that from a procedural standpoint there were two key errors. First, as Judge Schroeder's opinion for the court in Gerlinger v. Amazon.com noted, heightened pleading requirements, heightened evidentiary requirements for Article 3 standing issues only attach when there has been a summary judgment motion made by the district's judicial order regarding the subject matter. So, nothing of the sort happened here. This was an issue that was almost certainly definitively decided at the pleading stage after the parties determined that Ms. Menbreno and then later Lou Soriano had proffered their required Section 377.32 declarations under California law to establish that they were survivors of Manuel Soriano. So, that is the first procedural issue regarding standing. So, your position is that the affidavit is enough to establish standing and that is the end of the story on that? Certainly, Your Honor. It was established at the pleading stage. Mr. Gilbert, on Officer Stringer's behalf, did not move for summary judgment on it, and he did not raise the issue until this video link failure occurred. Well, but standing can be raised at any time. So, that does not strike me as problematic. Well, it certainly can be raised at any time, Your Honor, but there has to be, under due process clause, in addition to Gerlinger, under due process clause, there has to be meaningful notice and opportunity to be heard. And this issue first, to give you a sense of how quickly this transpired, this issue first occurred in the record at ER 15. By ER 30, the district court had already, the magistrate judge had already decided that he was going to dismiss on the basis of standing, failure to prosecute, and inherent authority. So, it was... So, should we, if we agreed with that, would we just remand it and have him do a separate,  At a bare minimum, Your Honor, there should be a remand such that Mr. Seat, on Ms. Mimbrano's behalf, has an opportunity to fully and adequately brief this issue and then argue it in a hearing before the magistrate judge, or as we have argued, because of the magistrate judge's strong comments directed toward Mr. Seat, perhaps a different district judge or magistrate judge. So, but, Your Honor, yes, at a bare minimum, that's what we are asking. If the court does not deem it appropriate to actually get to the merits of the Article III question. So, regarding Rule 41B and inherent authority, there's the same procedural defect. Again, there has to be due process, there has to be a meaningful notice and opportunity to establish in Lee v. County of Los Angeles, which we've said in our briefs, in the inherent authority complex and lesser v. Ford Motor Company. At a bare minimum, then, there would need to be an opportunity to brief those issues at length. On the merits, we would submit that the five prongs of the Al-Twerky test, this court set forth in Al-Twerky, all decidedly favored Ms. Mimbrano. There was no need to expeditiously end this trial. It was progressing on schedule and was likely going to be given to the jury following completion of testimony, closing arguments and instructions that same day, or at a bare minimum, the next day. There was no need for the district court to have any sort of managerial concerns regarding its own docket because of that compressed time frame. And most importantly, there was no prejudice whatsoever to Officer Stringer. Mr. Seahat was prepared to forego non-economic and economic damages altogether in order to get this to a jury. If anything, Mr. Seahat's proposed resolution was favorable to Officer Stringer because it potentially could have Ms. Mimbrano. If we were to agree with you that she should have been allowed to prove her standing with a declaration, suppose we go down that road and decide it was appropriate to exclude her testimony but inappropriate to dismiss, what would you tell the magistrate judge to do on remand? Is it a new trial? He would have a new trial and could he exclude her testimony for earlier failure to appear? We would certainly submit, Your Honor, first, as you suggested, that there should be a new trial together. Now, whether Ms. Mimbrano is allowed to testify, we would submit that she should be allowed to testify. He did permit her to do so after extended briefing and argument about this issue, even though he had expressed extreme reluctance. So we would suggest that that is the law of the case. Now, if the district judge, magistrate judge, whomever it is, decides to revisit the issue, we would at least want to propose adequate alternative measures so that this doesn't happen again, such as making sure that her testimony is locked in place this time via some type of deposition so that if the video link were to fail, then at least something could be proffered into evidence, introduced into evidence regarding damages. How would you authenticate such a declaration? We would suggest, Your Honor, in addition to having her execute the declaration under penalty of perjury, as she and Mr. Luis Soriano did initially, we could have the attorney in San Miguel essentially submit an accompanying declaration that would attest to her authenticity. He would, you know, basically acting as the equivalent of a notary public if that's permissible under Salvadoran law. We'd have to do further research to determine whether an attorney in El Salvador were equipped to do that. But certainly there would be measures, I think, that could allow the district court to have some comfort that this is indeed Ms. Manbreno, the mother of the deceased Manuel Soriano. So you're really asking for a do-over here because it seems to me you could have done that. You knew ten days ahead of time that she wasn't going to be able to appear. So, you know, if there is a way to get a declaration or an affidavit into evidence through, I have some doubts about that, but, that you could without a witness, but, and especially here where there was some controversy about is this the person who actually has the right to represent her. Right. And, you know, we recognize to the extent that you're referencing the magistrate judge's reservations about whether this was indeed Ms. Manbreno in the attorney's office in San Miguel, that would essentially suggest that, and we noted this in a footnote in, I believe, our third brief on Crossetville, that would essentially be suggesting that Mr. Sia was perpetrating a fraud in the court, and we would, of course, strenuously deny that that was what was happening. Well, how would he have known? I mean, I'm not sure it goes quite that far. Like, how would he have known that that was her? He's in the United States. Am I misunderstanding the facts? He was here before the court. He wouldn't have, I think you're saying it's the attorney in El Salvador that would have been perpetrating the fraud by saying that that was her in the room with him. And we don't have any foundation in the record to come to that conclusion, Your Honor. No, but I'm just saying I don't know that the fraud, or I don't know that he would have had the evidence or the personal knowledge as to whether she was actually in that room down in El Salvador or not. Are you referring to Mr. Sia, Your Honor? Yeah. Certainly, he didn't have any video evidence, but he had audio evidence in terms of having established, there was a Skype link established in the court, and there was a telephonic link established, and he had spoken with her on earlier occasions, so. I see you've moved into your reserved time. Do you want to reserve the rest? I reserve my remaining time for rebuttal. Thank you. Thank you, Your Honor. Good morning, Your Honor. May it please the court, I would respectfully request authority to retain three minutes for rebuttal on our cross-appeal. Thank you, Your Honor. The issues presented here are threefold, whether the dismissal under Rule 50 and 41 was justified, but also whether the facts of this matter constitute entitlement to qualified immunity on behalf of Officer Stringer. Now, before delving into the Rule 50 issue and addressing counsel's comments, I did want to provide a little backdrop on the actual facts and what is in the record in this. The notion that plaintiff did not appear and that was an isolated incident is completely belied by the record, as is evidenced time and again in the record in this matter. Plaintiff had failed to participate in this lawsuit. From the outset, the defendants were required to file a motion to join an indispensable party, namely the father. The parties actually argued this issue in front of the judge on the motion to dismiss stage, and the trial judge actually admonished and cautioned plaintiffs that they would need to preserve the testimony of the plaintiffs to assure they were present in the country or memorialized for trial. How long in advance was that? That was actually during the motion to dismiss proceedings, so at least nine months, possibly a year beforehand. Shortly thereafter, the parties entered into a stipulation wherein the parties stipulated that the depositions of the two plaintiffs would be taken in Los Angeles, that in lieu of traveling to El Salvador, plaintiffs would be presented for deposition in Los Angeles. That was memorialized in a stipulation which was then presented to the magistrate judge. The magistrate judge signed that and ordered that the city and the defendant officers would have that opportunity. Unbeknownst to the defendants at that time, the plaintiff had actually been denied a visa already, and plaintiff's counsel was aware of that. So when plaintiff's counsel signed that stipulation and represented to the court and counsel that the two plaintiffs would be in Los Angeles for their deposition shortly before trial, that was actually a false representation, Your Honor. That was actually something that he knew affirmatively, that a visa had been denied, and that they had not had success in getting approvals to come to this country for trial. That continued on until shortly before trial, and only during the pretrial proceedings did this issue come to the surface. At that point, plaintiff's counsel advised that he did not believe his clients would be able to attend, and he made a belated request to present their testimony by video. The initial motion was denied by the court. The court found that there was insufficient evidence to support the video testimony. The video testimony for trial? That's correct. And without a deposition? Without a deposition. Why would you agree to go forward without a deposition? I did not, Your Honor. We objected. The trial court overruled our objection and allowed plaintiff to submit a supplemental motion, trying to proffer additional facts. The trial judge's statement and decision on this issue, which is in the record, I believe, at ER 3536, actually goes through and discusses this history and talks about the borderline malpractice and malfeasance of plaintiff's counsel in misrepresenting facts, not securing this testimony, especially in light of the trial court's prior admonitions to counsel. And in fact, Your Honor, if I may, the civic ER sites, if you need them, there was actually a discussion at ER 955 to 958 about plaintiff's doing nothing to secure visas, and this is before the trial court at that point. ER 951 through 954, and again at 964 to 966, is the lack of diligence in attempting to obtain visas. And then at ER 835 through 850 is the trial court's discussion asking for additional facts to justify a video appearance. What I don't quite understand here is, did you try to depose them to take their deposition? Yes, Your Honor. We asked to take their deposition originally during the case. That resulted in a stipulation where plaintiffs... When you say during the case, what... Approximately six to eight months before trial. During discovery. During discovery, yes. And because the plaintiffs were in El Salvador, because of the difficulty in getting a video testimony and a secure connection, we agreed that if they were going to be at trial... And there was a secondary reason as well, is we anticipated filing a motion for summary judgment. And this is a significant matter, obviously. The plaintiff's son was killed. And we wanted to be sensitive to that and not take a deposition about their son and So we had proposed and asked the judge, could we move the deposition to before trial after the summary judgment was granted? And the trial judge and plaintiff's counsel agreed with that. We served a depo notice pursuant to that stipulation and order to notice the plaintiff's deposition shortly before trial. That was when we received notice from plaintiff's counsel that the plaintiffs would not be appearing in this country. That was the first notice we had that they would not be coming in. So you're saying the first notice you had was when you tried to notice their deposition? Yes, Your Honor. Okay, that's what I mean. So on that record, then once we get to trial court, the fact that the trial court is willing to accommodate plaintiff's failure to comply with their discovery obligations and is willing to grant a video test and deposition does not obligate the trial court to secure that attendance or to guarantee that the video will work. Here's my main concern about your side of the case is that you had a pretrial conference with the judge and you did not list this as an issue for trial that these parents, they're standing to sue. You didn't put that as an issue. Now, that's very similar to the parties stipulating before trial the undercolor of law aspect of proof. If they stipulate, then the jury doesn't even know about it. And it seems to me also the case law is that there has to be, it has to be contested. So what your opposition is saying, you were opportunistic, suddenly when you realized they weren't going to be able there, you raised the standing issue for the first time. And in fact, in your answer, you did not deny that they were the parents or, you know, you never raised this as a problem until they couldn't appeal. First the standing can raise, can be raised even for the first issue on appeal, it is never waived. It does not need to be contested. This isn't jurisdictional in the way. Oh, it is, Your Honor. There's a requirement that it has to plead and be proved. It was not raised in the pretrial pleadings because at that point there was an expectation that they were still trying to work to come to trial and they would be there. There was an expectation that they would still have to testify on the case. They were still seeking damages. They were still seeking evidence, recovery against the officers. There still had to meet their burden of proof on these issues. There was an affirmative defense of failure to state a claim. Part of the element of the claim is they must prove that they are the lawful heirs of the decedent. Now, although a declaration was offered in compliance with California Code of Civil Procedure 377, that is a hearsay document and were denied the opportunity to cross-examine them and the standard of proof at trial is much higher. So the CELIS-X standards established by the Supreme Court as far as pleading, that declaration  But it is not the same analysis at trial. So why didn't you put it down as an issue for trial? Because we expected that the plaintiffs would personally appear. We were being told that they were still... Still had to be proved. Well, you're right, it did. And that's plaintiff's burden of proof, Your Honor. Well, you had no... You never suggested there was someone else who was the rightful heir. We did raise the issue as a motion to dismiss early in the case and the father was actually not at it. So the father ended up being joined in and there was a series of motions where we did raise the issue of, do we have the right parties and who else do we need in the case early on? That resulted in the trial court providing the first admonishment that plaintiffs needed to make sure and be present at trial, especially the father who they were having trouble contacting. Now... Can I just say, just as a practical matter, I understand the proof issues, that all there is is a hearsay document right now. Is there a serious question about whether she is the mother and is entitled to bring this claim? Your Honor, we... I can't give you a definitive answer one way or the other. The problem is that we had no contact with them and the background checks that we did, that I did as counsel... So the answer is, do you have any idea that there's anybody else who would have standing and the answer is no? Well, the answer is there may have possibly been. There may have not possibly been. There was discussions about he may have had another child. There were discussions that he had a brother who was living in Los Angeles who refused to speak with us. So there was a dispute on this issue. And what would your position be if we remanded this for a further determination on the standing question? On the standing question, I believe that plaintiffs had already been provided an opportunity to be heard on that issue and accordingly, I don't believe it comes up. And because she didn't show up for the deposition. She didn't show up for the deposition. She didn't show up for trial. Although, could you address that? I mean, she didn't show up for trial, but it sounds like she was there and ready. What happened? It was... We don't know that she was there and ready. There was a connection somewhere. There was someone talking. There was at least two other people in the room. Well, you may not know who it was, but we have a statement from counsel saying that this was her client and that she was at least there ready. But the concern we have is what's to stop an unscrupulous attorney reading an obituary and simply filing suit? There has to be a standard of proof. I'm not saying that's the case here. Fair enough, but I think we've got to be a little bit careful. I think there's a presumption that the attorneys are acting within their ethical obligations here. And so if we accept that, but we also agree that there isn't currently admissible evidence to support standing, why don't we just remand it back and give a full chance? Doesn't that seem like the fairest thing to do? And... No, Your Honor, that prejudice is Officer Stringer. Officer Stringer has already been to court. Plaintiff has had her day in court. She decided not to show up. But there is no genuine issue of material fact as to whether or not... Yes, there is. There... No, you're just asserting there may be somebody out there. It's not proving, Your Honor. It is not conceded. It is Plaintiff's burden to prove it. But turning to the more crucial issue for us is the issue of qualified immunity. Officer Stringer, we believe, is entitled to qualified immunity. The trial judge denied qualified immunity on behalf of Officer Stringer based upon case law that has since been overturned. Significantly, the summary judgment order, the trial judge actually went through and confirmed that the facts supported a conclusion that there was a struggle. The officers incurred injuries and there was evidence of those physical injuries. The struggle also resulted in one of the officers being knocked unconscious. The officer, Officer Stringer, ultimately fired when he found himself faced with a suspect who was holding the metal level, wanting to take a swing at him. Now, the argument from Plaintiff at that summary judgment hearing and the basis for the trial court denying summary judgment is, well, it's disputed fact as to whether or not the suspect was holding the level at the time. But, as a couple of opinions thereafter confirmed, that is not the proper analysis. As the court determined in Easley, Easley involved a situation where a suspect had thrown a gun, he was not holding it, it was not in his hand, he had thrown it two to four seconds before, and he was shot in the back. Those facts are strikingly similar to this situation. Now, although Easley was ultimately overturned in Bonk based upon a decision that the city had waived the summary judgment right, the facts in the holding are still established that shooting a suspect in the back is not unreasonable, and the facts presented to Officer Stringer here confirm that his actions were unreasonable, especially in light of the published opinions. For example, Keeslaw, the United States Supreme Court recently came out and said that establishing the entitlement to qualified immunity must be done at a very specific factual specific level, not at a high level. Do you want to reserve time? You're down to about a minute forty-five. Yes, Your Honor. Thank you. I'll make a quick point regarding our issues and quickly make a point regarding qualified immunity. First, regarding the issues we've raised on appeal. Every single fact that Mr. Gilbert just stated regarding the circumstances that led up to this unfortunate technical snafu was disclosed and known by the district court, and despite all that and despite clear misgivings, the district court nevertheless decided, even though Ms. Mabrano had not been formally deposed, to allow her to testify via video link. And Mr. Gilbert, as we noted in our third cross-appeal brief, did not separately notice a cross-appeal regarding the district court's decision to allow Ms. Mabrano to testify by video link. So our position is that is not a live, active issue before this court. If we did send this back down because we want a full determination of standing, what would that look like? Would she appear for deposition at that point? It sounds like she can't come into the United States. Do they have to go to El Salvador to depose her? Can we set this up in a way that it could actually occur? We think it's unlikely, Your Honor, given current State Department visa policies, that she would be issued a B-1 slash B-2 visitor's visa, but we were prepared to do whatever it takes to make her available for a deposition, either telephonic or in El Salvador if the Salvadoran law allows it. It just seems that at a minimum, she should be deposed. And we agree that that's a reasonable measure, Your Honor, and we are prepared to do whatever it takes to make that happen within the parameters of U.S. and Salvadoran law. Quickly regarding qualified immunity, I noticed that my opponent, Mr. Gilbert, is still relying Would that be separate from the other relief that you want? If we were to remand, the issues with respect to standing and the merits would all be considered, wouldn't they? I mean, we agree that if the court decides that a limited remand is appropriate instead of an outright reversal, we're prepared to vigorously argue that there is standing and that there should not have been a dismissal under Rule 41B, an inherent authority. I noticed my time has expired. I was wondering if I could make one brief point regarding qualified immunity. I noted that my opponent, Mr. Gilbert, relied on EASLEE. EASLEE in terms of the three-judge panel opinion is completely vacated under longstanding practices of this court. So to the extent that he is attempting to cite the panel opinion for anything, it is not good law. If there are no further questions, I... Well, but it's not good law now, but would it have been good law, I guess I haven't looked at the timing, would it have been good law at the time that the action was taken? EASLEE issued in 2017, Your Honor, and the incident in this case occurred on August 27, 2015. So it actually postdated the incident in this case. Got it. Thank you. Thank you, Your Honor. Your Honor, there's a few points that need to be looked at. The court supplemental order, which is ER 35 and 36, actually talked about the perceived misconduct by plaintiff's attorneys. This is not a motion or an application for neglect or malpractice by plaintiff's attorneys. They chose a tactic and to go back and redo it and require Officer Stringer to sit in court again because plaintiff's tactic did not work in trying to hide a plaintiff, not promptly and honor their Rule 11 obligations for being manifest injustice to Officer Stringer. Let me ask you, what would have happened if they had assumed they knew that she wasn't going to be appearing, and they told you that earlier, would... I find it unusual that this court would go to trial without a deposition in this case. But if you had known this, I mean, I guess you made the motion at the time, but at that point it was so close to the trial, the district court seemed to kind of have his back up against the wall. At what point could you have said, hey, let's postpone the trial and see if we can nail down a deposition? It would have had to have been more than a few days before trial. At that point, witnesses had been secured, we were already proceeding to trial. And how much for, in your positions, how much earlier than that did they know that, did plaintiff's counsel know that his client wasn't going to be appearing? Several months before. When the parties signed a stipulation that moved this out, plaintiff's counsel was aware that she had applied for a visa, and that's contained within their motion. And that it had been denied? That it had been denied, and that she was having trouble. Furthermore, plaintiff's counsel was also aware that the father, the father plaintiff, had not made any efforts to obtain a visa, and was likely not coming to the country. So those facts should have been disclosed. The fact that plaintiff's counsel didn't, I think is tremendously prejudicial to Officer Stringer. Unless, well, did you have a question, go ahead. I do believe that qualified immunity is absolutely squarely on the facts. The order on summary judgment, notably the district court found specifically that this was a very hotly contested situation, that the officers were involved in a heated debate. And I think the word that the district court used was there was a melee, where all three involved parties incurred significant injuries, and the suspect had used the tool. I think we have your argument. Thank you, counsel. Can we take a break? Yeah. The court will take a break now. All rise.
judges: Schroeder, Lefkow, Nelson